UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No. 1:18-cr-00023-JPH-TAB | |
| | ) | | |
| ANTOINE NELSON, | ) | -01 | |
| | ) | | |
| Defendant. | ) | | |

**REPORT AND RECOMMENDATION**

This matter is before the undersigned U.S. Magistrate Judge pursuant to the Order

entered by the Honorable Sarah Evans Barker on August 9, 2018 [Dkt. 50], designating this

Magistrate Judge to conduct a hearing on the *Defendant's Motion to Suppress Evidence and*

*Statements* [Dkt. 39] filed on June 20, 2018, and to submit proposed Findings of Fact and

Recommendations for disposition of the *Defendant's Motion to Suppress* pursuant to 28 U.S.C. §

636(b)(1)(B).  A suppression hearing was held on October 5, 2018; Defendant Antoine Nelson

appeared in person with his counsel, Joseph Cleary and the Government appeared by Bradley

Shepard, Assistant United States Attorney.  [Dkt. 61.]  Testimony was taken and argument was

presented at the hearing.  [Dkt. 59; Dkt. 61.]  The parties were allotted until October 26, 2018 to

submit post-hearing briefs and proposed findings of fact and conclusions of law.  [Dkt. 61.]  On

November 13, 2018, this case was reassigned from Judge Sarah Evans Barker to Judge James

Patrick Hanlon.  [Dkt. 70.]  After the Court's review of the parties' documentation and for the

1

following reasons, the Magistrate Judge recommends the District Judge **DENY** *Defendant's*

*Motion to Suppress*.  [Dkt. 39.]

## I. BACKGROUND

On January 23, 2018 Defendant Nelson was charged with Count 1 – Felon in Possession

of a Firearm pursuant to 18 U.S.C. § 922(g)(1).  [Dkt. 11.]  As noted in the criminal complaint,

Indianapolis Metropolitan Police Department Officers Benedict and Mauk were dispatched to

Defendant Nelson's home at 245 S. Rural St., Indianapolis, Indiana, after a 911 call was made

from a neighbor.  [Dkt. 2 at 3.]  "The 911 call stated that children could be heard from inside [the

Defendant's residence] screaming that they were sorry and to please stop beating them."  [Dkt. 2

at 3.]  When the Officers arrived at the scene, they identified the neighbor who resided at 247 S.

Rural St., located on the other half of the duplex that shared a wall with the Defendant, as the

complainant who initiated the 911 call.  [Dkt. 59 at 7-8.]  The neighbor "poked his head outside,"

pointed at the Defendant's residence, and "put his finger over his lips as if to be quiet and listen."

[Dkt. 59 at 7-8.]

The Officers approached the Defendant's residence, which was "completely silent, and

very dimly lit[,]" knocked, and identified themselves as police.  [Dkt. 66 at 1; Dkt. 59 at 10.]

When the Officers received no answer at the door, Officer Mauk testified that he saw Defendant

Nelson point a gun at him through the Defendant's window.  [Dkt. 59 at 35-36.]  The Officers

moved to a more secure position outside of the Defendant's residence, had their firearms drawn,

and ordered the Defendant to come outside with his hands up.  [Dkt. 59 at 11-12.]  Officer

Benedict testified that he observed the Defendant "retreat completely out of view, into the house

for just a brief moment" before he came outside to comply with the police orders.  [Dkt. 59 at

12.] When Defendant Nelson came outside with his hands up, he was unarmed; the Officers observed an empty holster in the Defendant's appendix waistband area [Dkt. 59 at 13, 37.]

After explaining to the Defendant why the Officers were dispatched to the Defendant's residence and conducting a pat-down for weapons, Officer Benedict returned to his police vehicle to run a records check to attain background information by entering the Defendant's name and birthdate into his computer system, while Officer Mauk stayed with the Defendant on the porch. [Dkt. 59 at 37.] Officer Benedict "conducted a records check, a BMV records check, and a warrants check" and received notification from his computer display that a protection order existed. [Dkt. 59 at 13-14.] During the time Officer Benedict was conducting the records check, Officer Mauk entered Defendant Nelson's home and retrieved the firearm. [Dkt. 59 at 15.] Officer Benedict returned to the porch and "placed [the Defendant] under arrest for a charge of invasion of privacy for violating the protection order." [Dkt. 59 at 15.]

The Officers stated they observed two young children in the Defendant's home during the incident. [Dkt. 59 at 16, 39.] Officer Mauk testified while speaking to the Defendant on the porch, prior to entering the home to secure the firearm, Mauk could see the firearm "on the couch, sticking in plain view" and the children "[a]t times . . . within feet [of the gun] . . . [a]t other times, they were not within feet." [Dkt. 59 at 39.] The Officers stated the children's mother was contacted to come to the Defendant's residence to pick up the children; the children were released to their mother's custody once she arrived at the scene. [Dkt. 59 at 42.]

The Defendant argues that Officers discovered the firearm in a search of his home that was "unreasonable and in violation of the Fourth Amendment." [Dkt. 39 at 3.] The Defendant asserted in his *Motion to Suppress* he "did not give consent to the police to search his house" and no exceptions to the warrant requirement were applicable to permit a warrantless search. [Dkt.

39 at 2.  In the *Response in Opposition to Motion to Suppress*, the Government argues exigent circumstances were present to justify an exception to the warrant requirement.  [*See* Dkt. 45.]  At the suppression hearing and in its *Proposed Findings of Fact and Conclusions of Law*, the Government outlined three basis which permitted the search including: 1) Consent; 2) Exigent Circumstances and the related Emergency Situation; and 3). Inevitable Discovery  [Dkt. 59 at 58-59; Dkt. 68.]

## II. LEGAL STANDARD

Pursuant to Federal Rule of Criminal Procedure 59(b)(1) and 28 U.S.C. § 636(b)(1)(B), "A district judge may refer to a magistrate judge for recommendation on a defendant's motion . . . to suppress evidence . . . . The magistrate judge must enter on the record a recommendation for disposing of the matter, including any proposed findings of fact."  Fed. R. Crim. P. 59(b)(1); 28 U.S.C. § 636(b)(1)(C); *U.S. v. Raddatz*, 447 U.S. 667 (1980).  "The district court must consider *de novo* any objection to the magistrate judge's recommendation."  Fed. R. Crim. P. 59(b)(3) (italics added).  A district court's denial of a motion to suppress is reviewed "under a dual standard of review with factual findings reviewed for clear error and legal conclusions reviewed *de novo*."  *U.S. v. Martin*, 807 F.3d 842, 845 (7th Cir. 2015).  "A factual finding is clearly erroneous if we are 'left with the definite and firm conviction that a mistake has been made' . . . 'we give special deference to the . . . court that heard the testimony and observed the witnesses at the suppression hearing.'"  *U.S. v. Lewis*, 608 F.3d 996, 999 (7th Cir. 2010) (quoting *U.S. v. Gravens*, 129 F.3d 974, 978 (7th Cir. 1997).

## III. DISCUSSION

The Fourth Amendment establishes the bedrock principle that "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and

seizures, shall not be violated . . . ." U.S. Const. Amend. IV.  The power of the warrant is a safeguard to this protection against unreasonableness, as "searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980).  The warrant requirement is not without applicable exceptions to the rule.  "Where the government obtains evidence in a search conducted pursuant to one of these exceptions, it bears the burden of establishing that the exception applies . . . by a preponderance of evidence." *U.S. v. Basinski*, 226 F.3d 829, 833 (7th Cir. 2000).  The Court will individually address the Government's three outlined exceptions for the warrantless entry into Defendant Nelson's home.

## A.  Consent

"Consent lifts the warrant requirement of the fourth amendment but only if the consent to search is voluntary." *U.S. v. Quinones-Sandoval*, 943 F.2d 771, 774 (7th Cir. 1991).  To determine if consent is both freely given and voluntary, analysis rests on the "totality of the circumstances" in which the Court considers factors including: "(1) [Defendant's] age, education and intelligence; (2) whether [Defendant] was advised of his constitutional rights; (3) the length of detention prior to consent; (4) whether [Defendant] consented immediately or police made repeated requests for consent; (5) whether physical coercion was used; and (6) whether [Defendant] was in custody." *U.S. v. Lee*, 835 F.Supp.2d 657, 666 (N.D. Ind. 2011) (no one factor by itself is dispositive); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973) ("careful scrutiny of all the surrounding circumstances" override the "presence or absence of a single controlling criterion.").  Consent "may be given unintentionally and without knowledge of the right to refuse consent." *Lee*, 835 F.Supp.2d at 662.  The determination of the voluntariness of a consent to search is a "factual question . . . review[ed] for clear error." *U.S. v. Richards*, 741 F.3d 843, 847 (7th Cir. 2014).

Officer Mauk testified at the suppression hearing that after Defendant Nelson stepped outside onto the porch unarmed, Mauk began to have a conversation with the Defendant while Officer Benedict returned to his police vehicle to conduct the records check. [Dkt. 59 at 37.] During this conversation between Officer Mauk and Defendant Nelson, Mauk stated the front door to the residence was open and Mauk could see two children "running about inside of the residence," at times near the firearm. [Dkt. 59 at 38.] Officer Mauk stated he could see the firearm on a couch, visible through the open doorway. [Dkt. 59 at 39.] Officer Mauk testified he talked to Defendant Nelson about the danger the firearm could pose to the children and "asked Mr. Nelson if [Mauk] could get the firearm and make sure it was cleared so it was not around the children." [Dkt. 59 at 39.] Officer Mauk stated Defendant Nelson "agreed with [him], that it probably wasn't a good idea to have a firearm around children that were relatively young inside the residence," and that the Defendant "agreed with [him] that it would be a good idea to go get the weapon." [Dkt. 59 at 40.] Officer Mauk interpreted this conversation with the Defendant as consent to secure the gun, though Mauk stated "I can't say if [Defendant] said, 'No" to explicitly negate permission for Mauk to enter the home. [Dkt. 59 at 40.] Officer Mauk stated that he "basically" asked permission to secure the firearm after having a conversation with the Defendant as "fathers" in which Mauk testified he could not recall if the Defendant gave a definitive "Yes" but stated "Yes, [it was] probably a good idea" to remove the firearm from the children. [Dkt. 59 at 46.]

The Defendant raises the argument that the Government's first suggestion there had been consent for the search occurred at the suppression hearing with Officer Mauk's testimony. [Dkt. 67 at 4.] The Defendant asserts the state court probable cause affidavit by Officer Benedict, the Government's *Response in Opposition to the Defendant's Motion to Suppress*, and Officer

6

Benedict's affidavit prepared on June 21, 2018 in response to the Defendant's motion do not

mention consent.  [Dkt. 67 at 4.]  The Defendant contends "[i]t strains credulity to believe that if

Mr. Nelson really did consent to the search of his home that this would not have been put forth

by the government in its response to Nelson's motion."  [Dkt. 67 at 4.]  The Government

responded to this argument during the suppression hearing acknowledging having met with

Officer Benedict but not with Officer Mauk, as he was unavailable at the time.  [Dkt. 59 at 65-

66.]  The Court noted the point on the record at the suppression hearing and finds that Officer

Benedict specifically testified to not being present for the conversation Officer Mauk had with

Defendant Nelson concerning the firearm.  [Dkt. 59 at 64-66.]  Therefore, it would follow

Officer Benedict's testimony and affidavit statements may lack mention of consent.  The

undersigned finds the testimony of Officer Mauk at the suppression hearing to be credible for the

consideration of consent.

The Defense also questioned Officer Benedict during the suppression hearing about his

use of the pronoun "We" in his June 21, 2018 affidavit that read "we asked the defendant where

the firearm was, he eventually stated he placed the gun 'on the couch'" to argue that based on

Officer Benedict's testimony at the hearing he was not present for this conversation that actually

occurred between Officer Mauk and Defendant Nelson.  [Dkt. 46; Dkt. 48 at 2.]  The

undersigned finds Officer Benedict's testimony provides credible clarification in his explanation

that the use of the pronoun "We" is a collective term to reference the "police" and does not aim

to infer that Officer Benedict was part of the conversation that took place or negate the consent

argument proffered by the Government.

"An 'explicit verbal consent' or any other form of affirmative invitation to enter a

dwelling is not necessary to constitute 'consent' for the purposes of the Fourth Amendment."

*U.S. v. Villegas*, 388 F.3d 317, 324 (7th Cir. 2004).  Consent may be determined through non

verbal conduct.  *Id.*; *Lee*, 835 F.Supp.2d at 663 ("a person's action's alone can manifest his or

her consent to a search").  Officer Mauk testified after Defendant Nelson came out onto the

porch of the residence, the Officers "identified [themselves] as police officer[s], tried to figure

out what was going on[,]" and explained to the Defendant why the Officers had been dispatched

to the scene.  [Dkt. 59 at 37.]  During the one-on-one conversation with Officer Mauk regarding

the firearm, Defendant Nelson was not yet under arrest, handcuffed, or Mirandized, and Officer

Mauk's weapon had been holstered.  [Dkt. 59 at 38.]

   No evidence was presented that Defendant Nelson's age, intelligence, or understanding of the

events prevented his ability to give voluntary consent.  The Government was not obligated to

give Miranda warnings, as Defendant Nelson was not yet under arrest; nor were the Officers

required to instruct the Defendant that he could refuse consent.  *See U.S. v. Baker*, 78 F.3d 1241,

1244 (7th Cir. 1996) (Miranda warnings not required pre-arrest and "failure to inform a suspect

of his right to refuse consent to a search does not invalidate a consent that is voluntary.").  There

is no evidence Officer Mauk repeatedly requested consent or that the Officer used physical

coercion to obtain consent.  In the course of speaking with Defendant Nelson, Officer Mauk

could see two small children in the home and the firearm on the couch, and discussed these

dangers with the defendant.  There was no evidence presented that Defendant Nelson expressly

objected to Officer Mauk entering the residence to secure the firearm.  Officer Mauk interpreted

the Defendant's agreement that it would be a good idea to secure the firearm as consent; the

Defendant could have engaged in expressed objection or conduct that would have indicated

otherwise.  *See Lee*, 835 F.Supp.2d at 663 (Defendant's "failure to object . . . is further evidence

that her conduct was intended as consent.").  **Under the "totality of the circumstances," the**

**Magistrate Judge recommends the District Judge find the Government has met its burden of showing voluntary consent by a preponderance of evidence**.  Should the District Judge determine voluntary consent is present, additional exceptions to the warrant requirement need not be addressed.  Nevertheless, this report and recommendation further addresses the additional warrant exceptions argued by the Government.

### B.  Exigent Circumstances and Emergency Situation

The Government asserted exigent circumstances existed in this case to allow a warrantless entry into Defendant Nelson's home.  Courts "have recognized that a warrantless entry by criminal law enforcement officials may be legal when there is compelling need for official action and no time to secure a warrant."  *Michigan v. Tyler*, 436 U.S. 499, 509 (1978). To determine if circumstances rise to the level of exigency, the Court must "examin[e] the reasonableness of a police officer's belief that he faced exigent circumstances, and therefore, lacked sufficient time to obtain a warrant."  *U.S. v. Foxworth*, 8 F.3d 540, 544 (7th Cir. 1993); *see also U.S. v. Rivera*, 825 F.2d 152, 156 (7th Cir. 1987) (more than a subjective standard, rather "objectively reasonable" standard).  Consideration of the existence of exigent circumstances is both a question of fact and law, in which a district court's findings of fact are reviewed for "clear error" and questions of law are reviewed *de novo*.  *U.S. v. Kempf*, 400 F.3d 501, 503 (7th Cir. 2005) (exigent circumstances example may include situations where officers fear for their own safety "or the safety of someone inside the premises.")

The Government additionally raises the emergency situation exception, closely related to exigent circumstances, but applicable "where the police believe that a person within is in need of immediate aid."  *Mincey v. Arizona*, 437 U.S. 385, 392 (1978) ("We do not question the right of the police to respond to emergency situations.").  "The need to protect or preserve life or avoid

9

serious injury is justification for what would be otherwise illegal absent an exigency or emergency." *Wayne v. U.S.*, 318 F.2d 205, 212 (D.C. Cir. 1963).

Officers Benedict and Mauk testified they both responded to a 911 call and were dispatched to Defendant Nelson's residence to check on the welfare of the Defendant's children. [Dkt. 59 at 6, 33.] The Officers received information from dispatch that the neighbor reported hearing children screaming at Defendant Nelson's residence and that there was a concern for possible child abuse occurring inside the home. [Dkt. 59 at 6, 33.] As Officers attempted to get Defendant Nelson to answer the door, Officer Mauk observed that the Defendant was pointing a gun at him through the window. [Dkt. 59 at 35.] When Defendant Nelson came outside onto his porch, the Officers testified the Defendant was patted down for weapons, was wearing an empty holster in his waistband, and was unarmed. [Dkt. 59 at 12-13.] Officers Benedict and Mauk testified to seeing two preschool aged children in the residence after Defendant Nelson stepped out onto his porch prior to a records check being performed and the Defendant's arrest. [Dkt. 59 at 16, 39]. Officer Mauk testified that he and Defendant Nelson "made note that [the Defendant] had pointed a gun in [Mauk's] face" during their conversation outside on the porch. [Dkt. 59 at 37.]

The Defendant's *Findings of Fact and Conclusions of Law* stated, "[o]stensibly, there might have been two bases for exigent circumstances in this case," the first being that the Officers were responding to a welfare check call specifically concerning Defendant Nelson's children, and the second occurring after the Officers observed the Defendant with a firearm. [Dkt. 67 at 5.] However, the Defendant states this warrant exception does not apply because the Officers testified to seeing the children through the doorway and seeing no "grave danger" or bleeding. [Dkt. 67 at 5; Dkt. 59 at 29, 44.] The Defendant raises consideration that the Officers

had additional options that could have been explored without engaging in a warrantless search, including ordering the children to come out of the home to be secured inside a police vehicle to wait for the arrival of their mother.  [Dkt. 67 at 6.]

It is undisputed that Officers Benedict and Mauk were called to respond to a welfare check concerning the wellbeing of Defendant Nelson's children.  The Officers became aware of the existence of a potentially loaded firearm inside the home when Officer Mauk observed the Defendant pointing the gun at him.  The Officers were aware that Defendant Nelson was unarmed when he exited the inside of his home and conversed with Officer Mauk on the porch, leaving no question the firearm remained in the home. Officer Mauk stated he was able to see the firearm through the doorway.  It is not unreasonable to conclude that the presence of an unsecured firearm is inherently dangerous, particularly in the path of children; it alone poses grave risk even in the absence of visible injury to the children.  *See e.g., Kempf*, 400 F.3d at 503 (upheld district court denial of motion to suppress where officers observed that teenage boy in home where previous shooting occurred was not in immediate danger but "the police had every reason in the world to fear their safety and the safety of others who may have been inside the house").

The incident occurred in late January while temperatures were very cold outside, and Officer Mauk testified had the children been ordered out of the home he "believe[d] both of them would have had to pass by the gun."  [Dkt. 59 at 17, 41.]  "The question we must answer is not what the police could have done, but whether they had the reasonable belief that there was a compelling need to act and no time to obtain a warrant."  *Foxworth*, 8 F.3d at 544; *see also U.S. v. Richardson*, 208 F.3d 626, 629 (circumstances evaluated at the "moment of entry" as observed by an officer to warrant belief that an occupant inside needs aid).  Officer Benedict stated the

reason for not requesting a warrant in this case was because, "It was reasonable for me to believe that the children at that age, walking around, could have easily picked up the firearm, pulled the trigger and hurt themselves or us or Mr. Nelson at that point." [Dkt. 59 at 18]; *see also U.S. v. Antwine*, 873 F.2d 1144, 1147 (8th Cir. 1989) ("We cannot say that those findings, which were accepted by the District Court, are clearly erroneous" where U.S. Magistrate's Report found Agent's "sole purpose for recovery of the weapon at that time was the safety of the children.").

The Court notes the Defendant's argument raised in the *Reply to Government's Response to Motion to Suppress* [Dkt. 48] and *Tender of Proposed Findings of Fact and Conclusions of Law* [Dkt. 67] detailed discrepancies in Officer Benedict's probable cause affidavit [Dkt. 48-1], his June 21, 2018 affidavit [Dkt. 46], and his suppression hearing testimony [Dkt. 59.] Officer Benedict's affidavits do not mention the presence of two children in the home, while both Officer Benedict and Mauk testified at the suppression hearing to two children being present inside the home [Dkt. 46; Dkt. 59]. The children's mother attested to picking up her two children from Defendant Nelson's residence on the day of the incident. [Dkt. 48-2.] The hearing Court finds the discrepancy relating to the number of children present at the scene does not negate the exigent circumstances or emergency exception arguments proffered by the Government, nor does it negate the suppression hearing testimony of the Officers. *See, e.g., Franks v. Delaware*, 438 U.S. 154, 164 (1978) (regarding probable cause affidavits truthful showing requirement "does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct . . ."); *U.S. v. Williams*, 718 F.3d 644, 650 (7th Cir. 2013) (Officers' omission of information in probable cause affidavit did not negate the affidavit as "[t]he police were rushing to draft an application for a warrant and hastily omitted both favorable

and unfavorable evidence from the affidavit . . . . The district court . . . inferred no reckless

disregard, and that finding was not clearly erroneous.")

Additional differences raised by the Defendant included Officer Benedict's probable

cause affidavit stating Benedict "collected" the firearm while Benedict's June 21, 2018 affidavit

stated Officer Mauk "secured the firearm."  [Dkt. 48-1 at 3; Dkt. 46.]  The hearing Court finds

Officer Benedict's explanation of the term of art, "collected" credible as Benedict explained

Officer Mauk entered the home and secured the firearm, while Benedict "collected" it as the

arresting officer for transport to the police property room.  [Dkt. 59 at 21.]  Police procedural

terminology regarding the firearm does not negate the Government's proffered arguments of

exceptions to the warrant requirement.  The Magistrate Judge finds that the officers acted

reasonably to seize the firearm in question in order to prevent potential harm to the children

present.

**The Magistrate Judge recommends the District Judge find the Government has met**

**its burden of showing exigent circumstances and an emergency situation as exceptions to**

**the warrant requirement by a preponderance of evidence.**

### C.  Inevitable Discovery

The Government also argues that the exclusionary rule does not apply where the evidence of

the firearm would have been discovered by lawful means.  [Dkt. 66 at 7].  A delineated exception

to the warrant requirement, inevitable discovery provides that "[e]ven an illegally seized item

need not be suppressed if officers would have inevitably discovered it through lawful means."

*U.S. v. Bennett*, No. 11-3805, 2012 WL 3264414 (7th Cir. 2012) (defendant fired gun into air,

ran into home with the gun, and stepped on to porch without the gun and inevitable discovery

was applicable upon officer's belief defendant's mother gave valid consent and the district

court's reasonable conclusion that continuation of police efforts to recover the gun would have resulted in the ability to obtain a warrant); *U.S. v. Jones*, 72 F.3d 1324, 1130 (7th Cir. 1995) ("The inevitable discovery doctrine exemplifies balance . . . . [T]he inevitable discovery exception to the rule permits the introduction of evidence that eventually would have been located had there been no error . . . .")  "[W]hat makes a discovery 'inevitable' is not probable cause alone . . . but probable cause plus a chain of events that would have led to a warrant (or another justification) independent of the search." *U.S. v. Brown*, 64 F.3d 1083, 1085 (7th Cir. 1995).  Probable cause and a supporting sequence of events occurred in this case.

The Officers were dispatched to the Defendant's home as the result of of a 911 call concerning potential child abuse.  Upon approaching the Defendant's doorway, Officer Mauk saw Defendant Nelson point a gun at him through the window.  The Defendant exited his home without the observed firearm on his person.  The Officers observed two children inside the home. A records check notified Officer Benedict that a valid protection order was in place and that the Defendant was in violation of the protection order upon his possession of the visible firearm at the scene.  Officer Benedict testified that, but for the circumstances of the welfare check and children in the home, a warrant would have been sought to enter the home and retrieve the firearm.  [Dkt. 59 at 17-18].  The Government has argued the presence of both consent and exigent circumstances and an emergency exception to the warrant requirement.  Had the Officers been mistaken about their interpretation of consent in the conversation Officer Mauk had with Defendant Nelson or the exigency or emergency of the circumstances, given this sequence of events, the Officers could have attained a valid legal warrant to inevitably discover the firearm. *See, e.g., U.S. v. Buchanan*, 910 F.2d 1571, 1573 (7th Cir. 1990) (inevitable discovery upheld on

14

analysis that police would have sought a warrant and a neutral magistrate would have issued a warrant).

**The Magistrate Judge recommends that the District Judge find the Government has met its burden by a preponderance of evidence to show the firearm would have been attained through the inevitable discovery doctrine.**

### IV. CONCLUSION

Officer Mauk entered Defendant Nelson's home to retrieve and secure a firearm. Officer Mauk testified he could see the gun from his vantage point through the doorway in "plain view" on the couch. [Dkt. 59 at 39.] Once Officer Mauk entered the home, he testified he "secured the firearm that was on the couch, and brought it back outside." [Dkt. 59 at 47.] "Where the initial intrusion that brings the police within the plain view of such an article is supported, not by a warrant, but by one of the recognized exceptions to the warrant requirement, the seizure is also legitimate." *Horton v. California*, 496 U.S. 128, 135 (1990). The Magistrate Judge recommends that the District Judge find the Government has met its burden of demonstrating by a preponderance of evidence that 1) Defendant consented to the search for and seizure of the firearm; and that the 2) Exigent Circumstances and Emergency Situation; and 3) Inevitable Discovery exceptions to the warrant requirement are applicable to this case. As valid exceptions to the warrant requirement are applicable, **the Magistrate Judge recommends the District Judge find the seizure of the firearm was permissible.**

In turn, the Magistrate Judge recommends that the District Judge **DENY** the *Defendant's Motion to Suppress*. [Dkt. 39.]

#### Notice Regarding Objections

Within fourteen days of being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. § 636(b); Fed. R. Crim. P. 59(b)(2). A district

judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. § 636(b); Fed. R. Crim. P. 59(b)(3). "Failure to object in accordance with this rule waives a party's right to review." Fed. R. Crim. P. 59(b)(2); *U.S. v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003) (quoting *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986)) ("The general rule within the Seventh Circuit is that if a party fails to file an objection with the district court, he or she 'waives the right to appeal all issues, both factual and legal.'").

Dated:  19 NOV 2018

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the court's ECF system.