UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| UNITED STATES OF AMERICA, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) No. 1:18-cr-00023-JPH-TAB |
| ANTOINE NELSON, | ) |
| Defendant. | ) |

**ORDER ADOPTING THE MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

This matter is before the Court on Defendant Antoine Nelson's Motion to Suppress. Dkt 39. The Court referred this motion to Magistrate Judge Mark J. Dinsmore for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). The Magistrate Judge issued a Report and Recommendation recommending that the Motion to Suppress be denied. [Dkt. 71](Dkt. 71). Defendant timely objected to the Report and Recommendation. [Dkt. 78](Dkt. 78).

This Court reviews the Report and Recommendation under a *de novo* standard of review. Fed. R. Crim. P. 59(b)(3); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). For the portions of the Report and Recommendation Defendant did not object to, "the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Sys. Corp.,* 170 F.3d 734, 739 (7th Cir. 1999).

For the following reasons, the Court **OVERRULES** Defendant's objection, dkt. [78], **ADOPTS** the Report and Recommendation, dkt. [71], and **DENIES** the Motion to Suppress, dkt. [39].

I.   **Background**

On January 20, 2018, the Indianapolis Metropolitan Police Department received a call stating that children were screaming inside 245 South Rural Street and were asking for someone to stop beating them. Dkt. 2 at 3. Two police officers responded to the call: Officer Mauk and Officer Benedict. *Id.*

The police officers arrived at the house at the same time and approached the door to the house together. Dkt. 59 at 9-10. While Officer Benedict knocked on the door, Officer Mauk looked through the window and saw Defendant, Antoine Nelson, pointing a gun at him. *Id.* at 10-11, 35. The officers then retreated to a safe location and asked Defendant to come out of the house with his hands up. *Id.* at 11, 35-36. Defendant exited the house with his hands up, unarmed, and with an empty gun holster on the front of his pants. *Id.* at 12-13, 37.

Officer Mauk spoke with Defendant on the porch of the house while Officer Benedict went to the police vehicle to run a background check on Defendant. *Id.* at 37. While speaking with Defendant, Officer Mauk looked through the house's open door and saw a gun lying on a couch and two preschool children moving around the house. *Id.* at 37-40. At times, the children were within feet of the gun. *Id.* at 39. Officer Mauk asked Defendant if he could go into the house and get the gun so "it was not around the

2

children." *Id.* Officer Mauk testified that Defendant agreed with him and said that it was not a good idea to have the gun around the children. *Id.* at 39-40. Officer Mauk understood this statement to be consent, so he entered the house, grabbed the gun, and then returned to the porch to continue speaking with Defendant. *Id.* at 40-41. Defendant claims he did not consent to the search. Dkt. 39 at 2.

While Officer Mauk was speaking with Defendant on the porch, Officer Benedict was in the patrol car conducting a records check, BMV records check, and a warrant check on Defendant. Dkt. 59 at 13. Through these checks, Officer Benedict learned that Defendant was subject to a protection order that prohibited him from possessing or purchasing a firearm. *Id.* at 13-14. Officer Benedict returned to the porch shortly after Officer Mauk retrieved the firearm and arrested Defendant for violating the protection order. *Id.* at 15. The officers then waited in the house with the children until their mother arrived. *Id.* at 16-18. On January 23, 2018, Defendant was charged with Felon in Possession of a Firearm under 18 U.S.C. § 922(g)(1). Dkt. 11.

On June 20, 2018, Defendant moved to suppress the evidence found in his residence. Dkt. 39. That motion was referred to the Magistrate Judge for a report and recommendation. After reviewing the various briefs from the parties, dkt. 39; dkt. 45; dkt. 46; dkt. 48, and conducting a suppressing hearing, dkt. 59, the Magistrate Judge issued his Report and Recommendation denying the Motion to Suppress, dkt. 71.

On December 17, 2018, Defendant filed a timely objection to the Report and Recommendation. Dkt 78. On December 31, the government responded to Defendant's objections, dkt. 80, to which Defendant did not reply.

The Court has conducted a thorough review of the Report and Recommendation, the parties' filings before this Court and Magistrate Judge Dinsmore, and the transcript of the suppression hearing. After a *de novo* review of the issues for which objections were filed, and after a thorough consideration of all the issues raised in Defendant's suppression motions, the Court hereby accepts and adopts the Report and Recommendation, dkt. [71], and denies the Motion to Suppress, dkt. [39].

## II. Discussion

The Court's analysis of the Report and Recommendation starts with "the presumption that warrantless searches and arrests within a home are unreasonable and violate the Fourth Amendment." *United States v. Richards*, 741 F.3d 843, 847 (7th Cir. 2014). A warrantless search may be constitutionally permissible, however, if a "narrowly proscribed" exception applies. *United States v. Bell,* 500 F.3d 609, 612 (7th Cir. 2007). If the government argues that it obtained evidence under one of these exceptions, it bears the burden of establishing that the exception applies. *United States v. Denberg,* 212 F.3d 987, 991 (7th Cir. 2000). Here, the Magistrate Judge found that three of these proscribed exceptions apply: (1) consent, (2) exigent circumstances, and (3) inevitable discovery.

### A. Consent

Consensual searches without warrants do not violate the Fourth Amendment "because it is reasonable for law enforcement officers to conduct a search once they have been permitted to do so." *United States v. Maldonado*, 38 F.3d 936, 940 (7th Cir. 1994). In effect, a consent to a search "lifts the warrant requirement of the fourth amendment." *United States v. Stribling*, 94 F.3d 321, 324 (7th Cir. 1996).

At the suppression hearing, Officer Mauk testified he could see a firearm inside Defendant's house and children moving around the house, occasionally getting close to the gun. Dkt. 59 at 37-40. Officer Mauk asked if he could go get the gun to protect the children, and Defendant agreed that getting the gun was a "good idea." *Id.* at 40. Understanding this statement to be consent, Officer Mauk entered the house and retrieved the gun without a warrant. *Id.* Based on this testimony, the Magistrate Judge found that Defendant voluntarily consented to the search. [Dkt. 71](#) at 5-9.

In his objection to the Report and Recommendation, Defendant argues that Officer's Mauk testimony "is not believable," dkt. 78 at 3, because the government's response to his Motion to Suppress, dkt. 45, and Officer Benedict's affidavit supporting that response, dkt. 46, failed to mention Defendant's alleged consent. But these early omissions are explained by Officer Mauk's initial unavailability. As both officers testified, only Officer Mauk obtained the consent because Officer Benedict was in his patrol car at the time of the search. Dkt. 59 at 13, 39-40. In preparing its response to the

Motion to Suppress, the government only met with Officer Benedict because Officer Mauk was unavailable. *Id.* at 65-66. Therefore, the government made no mention of consent, presumably because Officer Benedict could not testify to getting consent. Once Officer Mauk was available, the government addressed consent and Officer Mauk testified that he obtained consent for the search. *Id.* at 37-40. The government, therefore, has explained why it did not address consent in its earlier response, and the Court finds that this explanation does not render Officer Mauk's testimony unbelievable.

With these alleged inconsistencies addressed, the parties' responses to the Report and Recommendation provide the Court with two competing accounts regarding consent. Defendant claims he did not consent; Officer Mauk claims that Defendant did. The Court finds Officer Mauk's testimony factually sufficient to support the finding that Defendant gave consent, dkt. 59 at 37-40, making Officer Mauk's credibility the determinative factor. There is nothing in the record that leads the Court to conclude that Officer Mauk's testimony not credible. In addressing the conflicting testimony, the Magistrate Judge found Officer Mauk's testimony "credible for the consideration of consent." Dkt. 71 at 7. The Court will not second-guess the Magistrate Judge's finding that Officer Mauk's account was credible, especially because the Magistrate Judge "had the opportunity to listen to testimony and observe the demeanor of witnesses at the suppression hearing." *United States v. Parker,* 469 F.3d 1074, 1077 (7th Cir. 2006). Therefore, the Court adopts the Magistrate Judge's analysis and finds that Defendant consented to the search.

Since it finds that Defendant consented to the search, the Court must next consider whether that consent "was freely and voluntarily given." *United States v. Grap,* 403 F.3d 439, 443 (7th Cir. 2005). Whether a party gave voluntary consent is a question of fact that is determined based on the totality of the circumstances. *United States v. Lewis,* 608 F.3d 996, 999 (7th Cir. 2010). "The following factors are considered in determining whether consent is voluntary: (1) the age, education, and intelligence of the individual; (2) whether he was advised of his rights; (3) whether he was in custody; (4) how long the individual was detained prior to consenting; (5) whether consent was given immediately or after several requests; and (6) whether the officers used physical coercion." *United States v. Thompson*, 842 F.3d 1002, 1009–10 (7th Cir. 2016).

The Magistrate Judge found that the government has met its burden of demonstrating voluntary consent. Dkt. 71 at 8-9. Defendant has not raised any objections to that portion of the Report and Recommendation, nor has he claimed that his consent was not voluntarily given. Therefore, the Court reviews that portion of the Report and Recommendation for clear error.

There is no evidence that Defendant's age, education, or intelligence prevented him from voluntarily consenting. While Defendant was not advised of his rights at the time he consented, *Miranda* warnings were not required because Defendant was not placed in handcuffs or told he was under arrest. *See Berkemer v. McCarty*, 468 U.S. 420, 440 (1984) (stating that *Miranda* warnings are only required when a suspect's freedom of action has been

7

restrained to a degree akin to formal arrest). Moreover, police officers need not inform suspects that they may refuse to consent for consent to be valid. *Grap*, 403 F.3d at 443. Defendant was not in custody or detained when he provided his consent. Dkt. 59 at 37-40. Officer Mauk did not repeat his request to search the house or coerce consent from Defendant, and his firearm was holstered during the conversation. *Id.* at 38.

Based on these facts, the Court agrees with the Magistrate Judge and finds that Defendant consented to the search and that consent was freely and voluntarily given.

### B. Exigent Circumstances

The Magistrate Judge also found that the officers could have lawfully searched Defendant's house without a warrant under the exigent circumstances exception. Dkt. 71 at 9-13. Under this exception, police officers may enter a residence without a warrant "to prevent serious injury and restore order." *Bell,* 500 F.3d at 612. For example, the Seventh Circuit has found exigent circumstances that justified a warrantless search when "the police reasonably feared for the safety of someone inside the premises." *United States v. Richardson*, 208 F.3d 626, 629 (7th Cir. 2000).

Here, the police officers arrived at Defendant's residence to check on the welfare of children after receiving a distressed 911 call. Dkt. 2 at 3; dkt. 59 at 6, 43. When speaking with Defendant about why the police had been called, Office Mauk could plainly see a firearm lying on a couch and two children passing within feet of that firearm. Dkt. 59 at 37-40. One of these children

8

appeared between two and three years old and the other was about four or five years old.  *Id.* at 40.  To prevent the children from hurting themselves or others, Officer Mauk decided to go into the house and retrieve the firearm.  *Id.* at 40-41.  The Magistrate Judge concluded that these circumstances constituted an exigent circumstance warranting the police officer's warrantless entry into the house.  Dkt. 71 at 9-13.

Defendant objects to this finding for two reasons.  First, he argues that the children were not in an emergency situation because Office Mauk could easily see them and testified that "nobody was bleeding or anything like that, no grave danger."  Dkt. 59 at 29.  But the Fourth Amendment does not obligate police officers to wait for an injury before they can enter a house without a warrant under exigent circumstances.  As the Seventh Circuit has found, police are not required to "stand outside an apartment, despite legitimate concerns about the welfare of the occupant, unless they can hear screams."  *United States v. Brown*, 64 F.3d 1083, 1086 (7th Cir. 1995).  The Court finds on the record before it that the presence of the unsecured firearm near two preschool children in an unsupervised residence constitutes an exigent circumstance even without immediate injuries.  *See United States v. Huddleston*, 593 F.3d 596, 600 (7th Cir. 2010) (citing cases for the position that the presence of a gun in a home is an exigent circumstance warranting a search without a warrant).  This is especially true when the children are the subject of a 911 call concerned about their welfare.  *Richardson*, 208 F.3d at 630 (stating that responses to 911 calls

9

fit "neatly with a central purpose of the exigent circumstances (or emergency) exception to the warrant requirement").

Second, Defendant argues that the Officer Mauk should have asked the children to come out of the house instead of going in himself to retrieve the gun. Dkt. 78 at 5-6. In addressing this claim, the Court considers "not what the police could have done, but whether they had the reasonable belief that there was a compelling need to act and no time to obtain a warrant." *United States v. Foxworth*, 8 F.3d 540, 544 (7th Cir. 1993). While calling the children out of the house may have been an option, both children would have passed by the gun when exiting. Dkt. 59 at 41. Furthermore, this incident occurred in the middle of January and it "was pretty cold out that day." *Id.* at 42. Weighing these considerations and all relevant facts, the Court sees nothing unreasonable in Officer Mauk's professional judgment that retrieving the gun himself was the best option. *See Reardon v. Wroan*, 811 F.2d 1025, 1029 (7th Cir. 1987) (stating that when "the police are called upon to respond to a crime reported to be in progress, we recognize that the police judgments should be afforded an extra degree of deference.").

Therefore, the Court agrees with the Magistrate Judge and holds that Officer Mauk lawfully entered the residence and retrieved the gun without a warrant under the exigent circumstances exception to the Fourth Amendment.

### C. Inevitable discovery

Finally, the Magistrate Judge found that the recovered firearm should not be excluded from evidence because the government met its burden of

establishing that it would have been discovered through lawful means. Dkt. 71 at 13-15. Under this exception, the government can rely on evidence that was obtained through a warrantless search if it can show that the evidence "would have been discovered by lawful means." *United States v. Gravens,* 129 F.3d 974, 979 (7th Cir. 1997).

Officer Mauk witnessed Defendant point a gun at his face through a window. Dkt. 59 at 35. He then witnessed Defendant come out of the house without that gun and saw it lying on a couch through an open door. *Id.* at 37-40. Officer Benedict confirmed that Defendant was subject to a protection order and was prohibited from possessing a firearm. *Id.* at 13-14. The Magistrate Judge found that "given this sequence of events, the Officers could have attained a valid legal warrant to inevitably discover the firearm." Dkt. 71 at 14.

Defendant objects to this finding, arguing that applying the inevitable discovery exception to these facts would allow "the exception to swallow the rule." Dkt. 78 at 7. Not so. While probable cause alone is not enough to make discovery inevitable, the officers here had "probable cause plus a chain of events that would have led to a warrant." *Brown*, 64 F.3d at 1085. Here, a police officer saw a person—who was later identified as a convicted felon—hold a gun and later discard that gun in the house. It is "reasonable to conclude that the police would have continued their efforts to locate the missing gun by obtaining a search warrant." *United States v. Bennett*, 491 F. App'x 760, 762 (7th Cir. 2012) (holding that the inevitable discovery exception applied after

11

convicted felon pointed a gun at a police officer but left the gun in his house after being told to drop his weapon). Indeed, Officer Benedict testified that if he were not concerned with the welfare of the children in the house, he would have obtained a warrant to retrieve the firearm. Dkt. 59 at 17-18. Therefore, the government has established a chain of events, independent of Defendant's consent or the exigent circumstances created by the presence of children, that would have led to a warrant and the eventual acquisition of the firearm.

While the inevitable discovery doctrine "is not an exception to be invoked casually," *Gravens,* 129 F.3d at 980, the government has met its burden of establishing that the firearm would have been discovered through lawful means. Therefore, the Court agrees with the Magistrate Judge and holds that the firearm should be allowed as evidence under the inevitable discovery doctrine.

### III. Conclusion

The Court has conducted a careful review of the Report and Recommendation and the record pertaining to the suppression motion. Based on its *de novo* review, the Court **OVERRULES** Defendant's objection, dkt. [78], **ADOPTS** the Magistrate Judge's Report and Recommendation, dkt [71], and **DENIES** Defendant's Motion to Suppress, dkt [39].

**SO ORDERED.**
Date: 1/31/2019

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Joseph Martin Cleary
INDIANA FEDERAL COMMUNITY DEFENDERS
joe_cleary@fd.org

Bradley Paul Shepard
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
brad.shepard@usdoj.gov